IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CV-602-FL

| | | |
|---|---|---|
| ANNAPURNA DEO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM AND |
| BRUCE MEIER, ROBERTA BENTON, | ) | RECOMMENDATION |
| EVELYN STURDIVANT, DUKE HEALTH | ) | |
| TECHNOLOGY SOLUTIONS (DHTS), | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Defendants' motion [DE-21] to enforce an arbitration award and to dismiss the complaint pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. Plaintiff has responded to Defendants' motion, Defendants have replied and the matter is ripe for disposition. The parties have not consented to the jurisdiction of the magistrate judge; therefore, Defendants' motion is considered here as a recommendation to the District Court. *See* 28 U.S.C. § 636(b)(1)(B); *see also* Local Civil Rule 72.3(c). For the reasons set forth below, this court recommends that Defendants' motion [DE-21] be ALLOWED.

## I. STATEMENT OF THE CASE

On October 21, 2011, Plaintiff filed a motion for leave to proceed *in forma pauperis*, which included among other materials, Plaintiff's proposed complaint. Compl. [DE-1-1]. On October 31, 2011, this court entered an order allowing Plaintiff's motion to proceed *in forma pauperis* and Plaintiff's complaint was filed October 31, 2012. [DE-3, 4]. Plaintiff alleges that she has been discriminated against in her employment in violation of Title VII of the Civil Rights Act of 1964 because of her race, sex and national origin. Compl. ¶ 3, 6. Plaintiff also claims

retaliation and discrimination with regards to "pay, raises, [and] opportunity." *Id.* ¶ 6.

On January 31, 2012, Defendants filed a motion to confirm an arbitration award pursuant to 9 U.S.C. § 9 on the grounds that all of Plaintiff's claims in her complaint have been litigated to a conclusion in an arbitration proceeding. Defs' Mot. to Confirm Arbitration Award and to Dismiss Pl.'s Compl. ("Defs.' Mot.") [DE-21]; Mem. of Law in Supp. of Defs.' Mot. to Confirm Arbitration Award and to Dismiss Pl.'s Compl. ("Defs.' Mem.") [DE-22]. Defendants move the court further to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(1) on the grounds that: (1) Plaintiff agreed to submit her claims to final and binding arbitration, claims which have been decided by an arbitrator and (2) Plaintiff's claims against the individually-named defendants should be dismissed because Plaintiff failed to name them in the administrative charge of discrimination ("Charge") Plaintiff filed with the Equal Employment Opportunity Commission ("EEOC"). Defs' Mot. at 1-2. Defendants move further to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that: (1) Plaintiff's complaint was filed after the 90-day limitations period from the date Plaintiff had constructive notice of her right to sue letter issued by the EEOC and (2) Title VII does not impose individual liability. *Id.* at 2. Finally, according to Defendants' motion, Defendant Duke Health Technology Solutions ("DHTS") is not a separate entity but is a department within Duke University Health System, Inc. *Id.* at 1 n.1. Defendants point out that DHTS has not been served with a copy of the complaint and a summons, and must therefore be dismissed for lack of personal jurisdiction in addition to the other asserted bases in Defendants' motion. *Id.* at 1; Defs' Mem. at 1 n.1.

On February 27, 2012, Plaintiff responded in opposition to Defendants' motion. [DE-28]. In particular, Plaintiff states that she "filed [her] case to the court within the 90 day period from

the date [she] received [her] letter from the EEO." *Id.* Plaintiff states that arbitration was not binding according to her former employer's grievance policy. *Id.* She states further in her opposition that the arbitration award was "very disappointing and biased," pointing out that the arbitration fee was paid by her employer. *Id.* On March 22, 2012, Plaintiff filed a second response to Defendants' motion in which she repeats her objections and includes copies of the post-arbitration briefing and the arbitration award. [DE-30]. Following Defendants' reply brief of April 4, 2012, Plaintiff filed a document entitled "Objection for Motion to Dismiss Clarifications," providing additional argument in support of her opposition to Defendants' motion. [DE-32]. In particular, Plaintiff responds that she received her right to sue letter from the EEOC on July 23, 2011, and filed her complaint within 90 days. *Id.* at 2. Plaintiff maintains that "[a]rbitration was a necessary step as a part of Duke Grievances [sic] process before I could bring complain [sic] to a court outside the [sic] Duke." *Id.* Plaintiff states again that she found the arbitration award to be biased and disappointing. She states further that "Duke witness staffs [sic] had meetings with the arbitrator during the hearing breaks that I personally saw, as well as they had lunch together before the Duke witness [sic] had chance to be in witness stands [sic], according [sic] what I was told by one of the Duke's [sic] witness. Such informal interactions could have had created [sic] an environment to [sic] influence and create unfairness." [DE-32] at 2.

## II. STATEMENT OF FACTS

A.    Plaintiff's Complaint

According to her complaint, Plaintiff was employed by Duke University ("Duke") in its DHTS department from July 17, 2001 until she was discharged on or about October 26, 2010.

3

Compl. ¶ 5; Charge [DE-4-3] at 2. Plaintiff alleges Defendants unlawfully discriminated against her by terminating her employment, discriminating against her with respect to her pay, pay raises and opportunity and retaliating against Plaintiff. Compl. ¶ 4. Plaintiff alleges she was discriminated against by Defendants DHTS and Bruce Meier ("Meier") a senior manager and Plaintiff's supervisor, Roberta Benton ("Benton"), a director, and Evelyn Sturdivant ("Sturdivant"), a human resources manager. *Id.* ¶¶ 2, 7.

Plaintiff alleges the discrimination occurred in May 2009 until her termination in October 2010. *Id.* ¶ 8. The nature of the alleged discriminatory conduct is in regards to modifications to Plaintiff's work schedule which Plaintiff contends was changed in a way that she was to "set up to fail." *Id.* ¶ 9. In particular, Plaintiff alleges that her arrival time was changed according to a "special conditional arrangement" from 9:00 a.m. to 8:30 a.m., then to 8:00 a.m. *Id.* According to Plaintiff the agreement allowed her to report to work at 8:30 a.m. if she was unable to arrive at 8:00 a.m., but that the arrangement was subsequently disallowed contrary to the agreement. *Id.* Finally, Plaintiff alleges she was terminated based on her late arrival after 8:00 a.m. on October 15, 2010 and October 20, 2010. *Id.* Plaintiff seeks recovery of back pay and reinstatement to her former position. *Id.* ¶ 12.

B.    Plaintiff's Discrimination Charge

Plaintiff has attached to her complaint the Charge she filed against Duke University/Duke University Health Systems with the EEOC on December 3, 2010. Compl. ¶ 11; Charge [DE-4-3] at 1. Plaintiff alleges she received her Notice of Right to Sue letter from the EEOC on July 23, 2011. Compl. ¶ 11. The Notice of Right to Sue letter attached to Plaintiff's complaint indicates it was mailed to Duke's counsel and Stewart Fisher ("Mr. Fisher") on July 15, 2011. [DE-1-2] at

4

1.[1]

In her Charge, Plaintiff complains of discrimination based on her race, sex, national

origin and retaliation. Charge [DE-4-3] at 1. Plaintiff's Charge narrative describing her

allegations states that Plaintiff was employed by Duke University/Duke University Health

System as an Administrative Assistant in the DHTS Division. [DE-4-3] at 2. Plaintiff states that

Meier was prejudiced against her because of her gender, race and national origin, and that Meier

repeatedly commented about Plaintiff's accent. *Id.* According to Plaintiff, although at all times

she met the expectations of her employer, Meier issued Plaintiff an unsatisfactory review based

on false information. *Id.* Plaintiff reported Meier to Human Resources for harassing her and

discriminating against her based on her race, sex and national origin. *Id.* On another occasion,

Meier attempted to place Plaintiff on a performance improvement plan ("PIP") and to issue

Plaintiff a written warning for performing below her employer's work expectations without citing

specific examples as to how she failed to meet expectations. *Id.* On another occasion, Meier

retaliated against Plaintiff by placing Plaintiff on a second PIP. In particular, Meier required

Plaintiff to arrive at work at 8:00 a.m., contrary to Duke's flextime policy. According to

Plaintiff, Meier refused to follow the flextime policy and to allow Plaintiff to reduce her hours

and issued her written warnings although Plaintiff had completed her work. *Id.* On October 26,

2010, Meier terminated Plaintiff's employment. *Id.* at 3.

C.     Arbitration Process

Defendants have submitted a document attached as Exhibit A to their principal brief and

---

[1]     Mr. Fisher was Plaintiff's counsel during the arbitration proceedings. [DE-22-1] at 3.

described the document as Plaintiff's demand for arbitration. Ex. A. [DE-22-1].[2] The document

identifies Plaintiff as "Grievant," provides Plaintiff's dates of employment with Duke and

indicates Plaintiff is represented by counsel in the arbitration proceedings. *Id.* at 2. The

document is signed by Plaintiff's counsel and indicates further that Plaintiff filed for arbitration

on March 3, 2011, and that Plaintiff's first choice of an arbitrator was Howard Cohen. *Id.* The

document indicates that the dispute to be arbitrated concerns "violation of Duke policy, wrongful

discharge, discrimination, retaliation" and that the relief Plaintiff seeks is "reinstatement, lost

wages, [and] damages." *Id.*

Defendants have submitted a document attached as Exhibit B to Defendants' brief which

Defendants contend is a copy of Duke's Dispute Resolution Process ("DRP") and an

acknowledgment form signed by Plaintiff affirming her receipt and review of the Duke Staff

Handbook and various employment policies, including Duke's employee guidelines for tardiness,

expected conduct and performance, and the DRP. Ex. B [DE-22-2] at 2. The DRP provides that

"Duke has established this procedure for fair, orderly, and prompt resolution of disagreements.

Any claim arising out of or relating to employment policies will be settled in accordance with

this procedure. The arbitration step of this procedure will be governed by the United States

Arbitration Act. Both the staff member and Duke are required to utilize this procedure to resolve

disagreements falling within its scope." *Id.* at 3. The DRP provides further that its scope

includes "any application, meaning or interpretation of personnel policies or procedures as they

affect work activities. Any claim based in whole or in part on federal, state or local laws whether

---

[2]      Plaintiff has not disputed the authenticity of Defendants' motion exhibits. In fact, Plaintiff
has included exhibits of her own referencing the arbitration between Plaintiff and Duke, including
the arbitration award. *See* [DE-30 through DE-30-4].

statutory or common law will be addressed through this procedure." *Id.* at 4. The DRP consists of three steps, the final step being arbitration. *Id.* at 4-8.

The arbitration process described in the DRP is initiated by the aggrieved employee upon request. *Id.* at 6. The DRP describes that an arbitration hearing will be conducted by an outside arbitrator selected from a panel of neutral arbitrators administered by the American Arbitration Association ("AAA"). *Id.* Neither Duke employees nor anyone with financial or personal interest in the arbitration result may serve as arbitrator. *Id.* at 7. The arbitration process includes, among other things, that the arbitrator will conduct a hearing to determine relevant facts and will render a decision following the hearing. *Id.* The fees and expenses of the arbitrator are to be paid by Duke. *Id.* An aggrieved employee may be represented by counsel during the arbitration hearing. *Id.* at 8. According to the DRP, the arbitrator's decision is "final and binding between the parties as to all claims which were or could have been raised in connection with the dispute." *Id.* at 7-8.

D.    Arbitration Award

Defendants have provided a document entitled "Award of Arbitrator" in the matter of the arbitration between Annapurna Deo v. Duke University of the AAA Arbitration Employment Tribunal. Ex. C ("Award") [DE-22-3]. The Award was signed by Arbitrator Howard M. Cohen on August 1, 2011. *Id.* at 9. The Award indicates Arbitrator Cohen was designated in accordance with the DRP and appointed by the AAA. *Id.* at 2. The Award indicates further that the arbitrated issues concerned Plaintiff's involuntary separation from her employment with Duke. *Id.* According to the Award, Arbitrator Cohen held an evidentiary hearing June 15-16, 2011, administered by the AAA Employment Arbitration Rules and Mediation Procedures,

7

during which Plaintiff and Duke were each represented by counsel. *Id.* Testimony was taken

from Plaintiff and seven other individuals including Meier, Sturdivant and Benton. *Id.* Plaintiff

and Duke offered several exhibits, all of which were accepted into evidence except for one of

Plaintiff's exhibits. *Id.* Each party submitted post-hearing briefing to be considered by

Arbitrator Cohen. *Id.* at 3.

The Award indicates that the issue decided through the arbitration proceedings was

whether Plaintiff's employment was terminated in violation of the law or Duke's employment

policy. *Id.* at 3. In particular, Plaintiff contended that Duke discriminated against her on the

basis of her national origin and gender and wrongfully discharged her. *Id.* Duke denied

Plaintiff's allegations and contended that Plaintiff's termination was consistent with its work

performance and corrective action plans. *Id.*

Arbitrator Cohen made several findings regarding Plaintiff's claims. *See id.* at 3-9.

According to those findings, in May 2009, Meier changed Plaintiff's working hours to a start

time of 8:30 a.m. and quitting time of 5 p.m. Plaintiff had difficulty complying with the new

starting time and Meier counseled Plaintiff about her late arrivals to work before documenting

the problems in Plaintiff's annual review, in which Meier indicated Plaintiff was performing

below expectations. Meier began meeting with Plaintiff to help her improve her performance

resulting in the issuance of a PIP on October 30, 2009. The PIP also addressed Plaintiff's late

arrivals at work, advising her that she was required to be at the office at 8:30 a.m. On September

11, 2009, Plaintiff requested her work hours be changed because she was having difficulty

arriving at work by 8:30 a.m. Meier denied her request noting he had previously accommodated

Plaintiff by allowing her to start work at 8:30 a.m. instead of 8 a.m. Based on Plaintiff's poor

8

performance review, Plaintiff met with Sturdivant. Following the meeting, Sturdivant sent Plaintiff a memo acknowledging Plaintiff's complaint of harassment by Meier, and Sturdivant directed Plaintiff to provide a written statement describing the harassment. However, Plaintiff failed to provide a statement and Sturdivant testified Plaintiff never complained of harassment based on her national origin or gender. Arbitrator Cohen found further that nothing in Sturdivant's memo suggests Plaintiff complained of discrimination. At Sturdivant's suggestion, Plaintiff contacted Duke's Office of Institutional Equity ("OIE") and met with the Director of Harassment Prevention, Cynthia Clinton. According to Arbitrator Cohen, Clinton's testimony and exhibits established that Plaintiff did not complain about discrimination nor did she mention any facts supportive of such a claim, and that Plaintiff's complaints of harassment were related to Meier's management style and not Plaintiff's gender or national origin. Plaintiff complained further about her starting time and performance review. Although Plaintiff testified she complained to both Sturdivant and Clinton about discrimination, Arbitrator Cohen noted the lack of written evidence supporting Plaintiff's complaint. Instead Arbitrator Cohen cited the testimony of Sturdivant and Clinton in finding Plaintiff never raised the issue of gender and national origin discrimination and that her complaints of harassment did not relate to gender or national origin.

In January 2010, Meier issued Plaintiff a written warning for tardiness which Sturdivant approved and issued Plaintiff a second PIP. On June 9, 2010, Meier approved a change in Plaintiff's work schedule allowing Plaintiff to leave work early on Fridays, but which would require her to be at work at 8 a.m. each day. Shortly after agreeing to the new start time Plaintiff began arriving late for work. Plaintiff asked to return to the earlier start time of 8:30 a.m., but

did not indicate a willingness to forego quitting work early on Fridays. Plaintiff's offer would have resulted in a reduction in her work hours and Meier denied her request. The arbitrator found no evidence to suggest that the denial of her request for a change in hours was related to discrimination.

On October 1, 2010, Meier issued Plaintiff a second final warning for tardiness, yet Plaintiff continued to arrive late for work and was terminated on October 26, 2010. Plaintiff appealed her termination through the DRP and her dismissal was upheld. Arbitrator Cohen found no evidence of discrimination in requiring Plaintiff to work assigned hours or refusing to grant her further flexibility on her work hours, nor did he find any evidence of retaliation in the decision to terminate Plaintiff's employment. Arbitrator Cohen concluded there was a lack of evidence supporting Plaintiff's claims of discrimination or retaliation and he found no violation of the law in Plaintiff's termination. Having considered the evidence submitted and arguments made, Arbitrator Cohen found in favor of Duke, denying Plaintiff's reinstatement, back pay, damages and attorney's fees. Arbitrator Cohen's award "is in full settlement of all claims submitted to [] Arbitration." *Id.* at 9.

## III. STANDARD OF REVIEW

A.    Rule 12(b)(1)

A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure raises the fundamental question of whether a court is competent to hear and adjudicate the claims brought before it. Accordingly, when a party sets forth a Rule 12(b)(1) defense in addition to other Rule 12 defenses, the court should resolve the 12(b)(1) motion first, because if the court lacks jurisdiction, the remaining motions are moot. *Foxworth v. United States*, No.

10

3:10-CV-317, 2010 U.S. Dist. LEXIS 106759, at *5, 2010 WL 3938267, at *2 (E.D. Va. Oct. 6, 2010) (citing *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 548 (4th Cir. 2006)).

A defendant may challenge subject matter jurisdiction facially or factually. *Wollman v. Geren*, 603 F. Supp. 2d 879, 882 (E.D. Va. 2009). If the defendant presents a facial challenge by arguing the complaint fails to allege facts upon which subject matter jurisdiction can be based, all facts alleged in the complaint are presumed true. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Alternatively, if the defendant presents a factual challenge by arguing that jurisdictional facts alleged in the complaint are untrue, the court may consider extrinsic information beyond the complaint to determine whether subject matter jurisdiction exists. *See Wollman*, 603 F. Supp. 2d at 882 (citation omitted). In both situations, the burden rests with the plaintiff to prove that federal jurisdiction is proper. *Id.; see also Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). Here, Defendants have challenged the subject matter jurisdiction of this court over the dispute on the grounds that the claims asserted in the complaint were the subject of binding arbitration. Defs' Mot. at 1; Defs' Mem. at 5. Whether the parties have agreed to arbitrate their dispute is a jurisdictional issue and the court may consider material outside of the pleadings in determining a motion to dismiss for lack of subject matter jurisdiction. *Joyner v. GE Healthcare*, No. 4:08-2563-TLW-TER, 2009 WL 3063040, at *2 (D.S.C. Sept. 18, 2009) (citing *Bhd. of Ry. & S.S. Clerks v. Norfolk S. Ry. Co.*, 143 F.2d 1015, 1017 (4th Cir. 1944) ("Arbitration deprives the judiciary of jurisdiction over the particular controversy and the court have long ruled that there must be strict adherence to the essential terms of the agreement to arbitrate.")).

11

B.   Rule 12(b)(6)

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

However, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Moreover, a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. Pshp.*, 213 F.3d 175, 180 (4th Cir. 2000).

12

## IV. DISCUSSION

A.    Confirmation of the Arbitration Award

The Federal Arbitration Act ("FAA") provides in relevant part that:

[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to arbitration, and shall specify the court, then at any time within one year after the award is made any to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified or corrected as prescribed in sections 10 and 11 of this Title. If no court is specified in the agreement of the parties, then such application may be made to the United States Court in and for the district within which such award is made.

9 U.S.C. § 9.[3] Accordingly, the court must determine "whether the parties agreed to arbitration as a binding process, one that would bar litigation, or whether the agreement to arbitrate was simply a dispute settlement process that was a condition precedent to litigation." *Choice Hotels, Int'l, Inc., v. Green Valley Motels, Inc.*, 195 F. Supp. 2d 739, 740 (D. Md. 2002) (quoting *Rainwater v. Nat'l Home Ins. Co.*, 944 F.2d 190, 192 (4th Cir. 1991)). "Where there is an agreement to binding arbitration, the court must grant the order unless the award is vacated, modified, or corrected." *Id.*

Here, Plaintiff does not dispute that the claims she asserts in her complaint were subject

---

[3]    Neither party has raised whether this district is the proper district in which to seek enforcement of the arbitration award. The court notes, however, that the venue provisions of the FAA are permissive, permitting a motion to confirm, vacate, or modify an arbitration award either where the award was made or in any district where the court has subject matter and personal jurisdiction over the parties' confirmation petition, and do not restrict such a motion to the district where the award was made. *See Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.*, 142 F.3d 188, 191-92 (4th Cir. 1998). Here, the court has personal jurisdiction over the petition because Plaintiff resides within the Eastern District of North Carolina. *See Lander Co, Inc. v. MMP Investments, Inc.*, 107 F.3d 476, 481 (7th Cir. 1997) (venue in action by manufacturer to enforce arbitration award against distributor was appropriate in district in which distributor resided, under conventional venue principles, even though arbitration was conducted in another state.). The subject matter of Plaintiff's complaint, Title VII, confers grounds for subject matter jurisdiction.

13

to arbitration. *See* [DE-28, -30, -32 at 2]. Rather, Plaintiff maintains that arbitration was simply a condition precedent to pursuing her claims in federal court. *Id.* Plaintiff's position however is not tenable. Plaintiff cites no authority for her position and the undisputed evidence shows Plaintiff reviewed and understood her employer's work policies and the DRP, which included the provision that disputes would be resolved through binding arbitration. [DE-22]; *see Hightowver v. GMRI, Inc.*, 272 F.3d 239, 242 (4th Cir. 2001) (agreement to binding arbitration found where plaintiff acknowledged his receipt of his employer's dispute resolution procedures containing a binding arbitration provision and thereafter continued working). Indeed, Plaintiff initiated the arbitration proceedings in accordance with the DRP and was represented by counsel throughout the arbitration proceedings. Plaintiff focuses instead on overturning the arbitration award.

To that end, the district court has a limited scope of review over arbitration decisions. *Remmey v. Painewebber, Inc.*, 32 F.3d 143, 146 (4th Cir. 1994); *Three S Delaware, Inc. V. Dataquick Infor. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007). The limited nature of judicial review over such decisions is widely recognized as "necessary to encourage the use of arbitration as an alternative to formal litigation." *Remmey*, 32 F.3d at 146; *see Upshur Coals Corp. v. United Mine Workers of America*, 933 F.2d 225, 228 (4th Cir. 1991) ("An arbitrator's award is entitled to a special degree of deference on judicial review."); *see Apex Plumbing Supply*, 142 F.3d at 193 ("Review of an arbitrator's award is severely circumscribed."); *see Peoples Sec. Life Ins. Co., v. Monumental Life Ins. Co.*, 991 F.2d 141, 145 (4th Cir. 1993). Accordingly, some courts have described the role of reviewing an arbitration decision as being limited to determining "whether the arbitrators did the job they were told to do - not whether they did it well, or correctly, or reasonably, but simply whether they did it." *Remmey*, 32 F.3d at 146

14

(quoting *Richmond, Fredericksburg & Potomac R. Co. v. Transp. Commc'n Int'l Union*, 973 F.2d 276, 281 (4th Cir. 1992) (subsequent citations and internal quotations omitted)). A court may not overturn an arbitration award even if the court "would have reached a different conclusion if presented with the same facts." *Remmey*, 32 F.3d at 146.

The court may vacate an arbitration award under certain limited circumstances: (1) where the award was procured by corruption fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10(a). In addition to these statutory grounds, or in conjunction with them, an award may be overturned if it was in "manifest disregard" of the law or contrary to the "essence" of the agreement to arbitrate. *See Remmey*, 32 F.3d at 150; *see Apex Plumbing Supply*, 142 F.3d at 193 n.5.[4] These grounds allow for challenges to an arbitration award based on sufficiently improper conduct by the arbitrator; they do not allow rejection of the arbitration award simply because the losing party disagrees with the particular result the arbitrator reached. *Remmey*, 32 F.3d at 146. Accordingly, the parties may not seek a "'second bite at the apple' simply because they desire a different outcome." *Id.* "To permit such attempts

---

[4] It is unclear whether the common law grounds for vacatur of an arbitration award, including "manifest disregard of the law" or "essence of the agreement," remain valid following the Supreme Court's decision in *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576 (2008). *See generally Regale, Inc. v. Thee Dollhouse Productions N.C., Inc.*, 761 F. Supp. 2d 310, 314 n.2 (E.D.N.C. 2011) (collecting cases).

would transform a binding process into a purely advisory one." *Id.* (quoting *Richmond, Fredericksburg & Potomac*, 973 F.2d at 282).

Plaintiff argues that the arbitration award must be overturned because the arbitration proceedings were biased. Plaintiff carries a heavy burden to sustain overturning an arbitration award on grounds of evident partiality. *See Remmey*, 32 F.3d at 148 (arbitration award sustained where plaintiff alleged chair of arbitration panel made comments throughout the arbitration proceedings indicating empathy for defendants and participated in ex parte communication with defendants' counsel). To meet this burden, Plaintiff "must show that 'a reasonable person would have to conclude that an arbitrator was partial' to the other party to the arbitration." *See Peoples Sec.*, 991 F.2d at 146 (citation omitted). "It is well established that a mere appearance of bias is insufficient to demonstrate evident partiality. Arbitrators are not held to the ethical standards of Article III judges. . ." *Remmey*, 32 F.3d at 148 (quoting *Peoples Sec.*, 991 F.2d at 146 (subsequent citation omitted)). Plaintiff has the burden of proving "specific facts that indicate improper motives on the part of the arbitrator" and the partiality alleged "must be direct, definite, and capable of demonstration rather than remote, uncertain or speculative." *Peoples Sec.*, 991 F.2d at 146. Here, Plaintiff states that she saw Duke witnesses meet with the arbitrator during breaks in the arbitration proceedings. [DE-32] at 2. Plaintiff states further that she was also told by a witness that Duke's witnesses had lunch with the arbitrator before testifying. *Id.* Plaintiff states that "such informal interactions could have had [sic] created an environment to influence and create unfairness." *Id.*

The record fails to sustain Plaintiff's challenge to the arbitration award on the grounds of bias. The record reflects that Arbitrator Cohen, Plaintiff's preferred choice as an arbitrator, held

16

an evidentiary hearing over a period of two days, during which Plaintiff was represented by counsel and in which several witnesses testified and Plaintiff submitted several exhibits considered by the arbitrator. At several instances cited within the arbitration award, Arbitrator Cohen found that many of Plaintiff's contentions failed because Plaintiff did not provide supportive evidence. Furthermore, Plaintiff has failed to demonstrate how that the alleged contact between the witnesses and Arbitrator Cohen, only part of which she observed, adversely impacted the arbitration proceedings. *See Remmey*, 32 F.3d at 149 (holding that "the party seeking a vacation of an award on the basis of ex parte conduct must demonstrate that the conduct influenced the outcome of the arbitration.") (citation omitted). Indeed, Plaintiff readily admits she cannot demonstrate any actual bias, but merely suggests that such alleged informal contact with the arbitrator "could have" influenced the arbitration outcome. [DE-32] at 2. Plaintiff's failure to make the required showing bars vacatur of the arbitration award.

Finally, in support of vacating the arbitration award, Plaintiff points out that the arbitration fees and expenses were paid by Duke. The payment of arbitration fees, in conjunction with other findings, may provide a basis to invalidate an agreement to arbitrate when the fees are shared, or split, between the parties subject to arbitration. *See e.g., Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 553-54 (4th Cir. 2001) (noting that a fee-splitting provision in an employment agreement which requires employee to share costs of arbitration can render a mandatory arbitration agreement unenforceable where the arbitration fees and costs are so prohibitive as to effectively deny the employee access to the arbitral forum). Here, however, there is no fee-splitting provision in the arbitration agreement. As demonstrated in the DRP and the arbitration award, Duke is responsible for the payment of arbitration fees and expenses,

17

regardless of the outcome. [DE-22-2] at 7; [DE-22-3] at 9. To the extent Plaintiff contends Duke's payment of the fees affected the impartiality of the proceedings, Plaintiff has failed to adequately articulate this challenge much less carry her burden of demonstrating that Duke's payment, win or lose, affected the objectivity of an arbitrator.

Based on the foregoing, this court finds Plaintiff's claim of bias in the arbitration proceedings to be without merit and recommends that the arbitration award be confirmed.

B.    Subject Matter Jurisdiction

Dismissal of the complaint is the appropriate remedy when all of the issues presented in a lawsuit are subject to arbitration. *See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001); *Cook v. General Electric Co.*, No. 5:09-CV-400-BO, 2010 WL 4885115, at *6 (E.D.N.C. Nov. 23, 2010)(granting employer's motion to dismiss for lack of subject matter jurisdiction "[b]ecause all claims alleged in Plaintiffs' complaint fall within the scope of the relevant employment agreement and must be submitted to arbitration."). Here, Plaintiff's complaint purports to assert causes of action arising under Title VII based on allegations stemming from the modifications to her work schedule and alleged treatment by Meier, her supervisor. In accordance with the DRP, Plaintiff agreed to submit all claims relating to employment policies or claims based on federal law to binding arbitration. [DE-22-3] at 4. All of Plaintiff's claims asserted in her complaint fall within the scope of the DRP and are subject to binding arbitration. *See Cook*, 2010 WL 4885115, at *5-6. In fact, the very same claims she seeks to assert in her complaint have been previously litigated in binding arbitration.[5] Moreover,

---

[5]    Plaintiff's post-arbitration hearing briefing confirms that Plaintiff's complaint is a reassertion of her arbitration claims of discrimination, retaliation and harassment stemming from changes to her work schedule and treatment by Meier. *See* Petitioner's Brf. [DE-30-3] at 10-15. Additionally,

Plaintiff does not dispute that the claims she presently asserts were in fact arbitrated. [DE- 28, -30, -32]. Because Plaintiff's purported causes of action are the subject of arbitration, this court lacks subject matter jurisdiction and recommends that these claims be dismissed.

C.     Plaintiff's Claims against the Individually-Named Defendants

Plaintiff has asserted claims of discrimination arising under Title VII against individual defendants Meier, Benton and Sturdivant. According to Plaintiff, Meier is her supervisor, Benton is a director and Sturdivant is a human resources manager. *See* Compl. ¶ 7; Charge [DE-4-3] at 2. Individuals, however, may not be held personally liable under Title VII. *See Lissau v. Southern Food Serv., Inc.*, 159 F.3d 177, 180-81 (4th Cir. 1998) ("Supervisors are not liable in their individual capacities for Title VII violations" because an individual supervisor is not the plaintiff's "employer."); *see Ward v. Coastal Carolina Health Care, P.A.*, 597 F. Supp. 2d 567, 570 (E.D.N.C. 2009) ("[I]ndividual employees of corporate entities ... are not liable in their individual capacities for Title VII violations because such individuals are not 'employers' under Title VII."). Plaintiff's claims against Defendants Meier, Benton and Sturdivant must be dismissed because none of these defendants is an employer under Title VII.

D.     Personal Jurisdiction over Defendant DHTS

The docket fails to reflect that Defendant DHTS has been served with summons and a copy of the complaint in this matter. *See* Process Rec't & Return [DE-20]. Under Federal Rule of Civil Procedure 4(c)(1), "[a] summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by

---

Plaintiff argues she is entitled to backpay and reinstatement - the same remedies she seeks from this court - if the arbitrator finds in her favor, thereby further militating against her present contention that arbitration was simply a condition precedent to federal court. *Id.* at 9.

Rule 4(m) and must furnish the necessary copies to the person who makes service." Further, "[i]f a defendant is not served within 120 days after the complaint is filed, the court ... must dismiss the action without prejudice against that defendant or order that service be made within a specified time" unless the plaintiff shows good cause for the failure to make service. Fed. R. Civ. P. 4(m). "Absent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant." *Koehler v. Dodwell*, 152 F.3d 304, 306 (4th Cir. 1998); *Cherry v. Spence*, 249 F.R.D. 226, 228 (E.D.N.C. 2008).

Although this court has recommended that claims in this matter either be dismissed or resolved in a manner no longer requiring court action, as an alternative ruling, this court recommends Plaintiff be directed to show cause why her claims against Defendant DHTS should not be dismissed without prejudice.

## V.  CONCLUSION[6]

For the reasons stated above, this court RECOMMENDS to the District Court that Defendant's motion [DE-21] be ALLOWED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

---

[6]  Because this court has recommended Plaintiff's complaint be dismissed on the grounds discussed, the court does not consider the remainder of Defendants' arguments for further disposition under Rule 12(b)(6).

Submitted, this the 17th day of July, 2012.

Robert B. Jones, Jr.
United States Magistrate Judge